## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

|  |  |
|---|---|
| EDWARD M. DOLLER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HERTZ GLOBAL HOLDINGS, INC., et al.,<br><br>    Defendants. | Case No. 2:24-CV-00513-JLB-KCD |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

The Opposition[1] applies the wrong legal standard, relies on jarringly selective quotations of Defendants' statements, and disregards Eleventh Circuit precedent. Applying the PSLRA and Eleventh Circuit case law, it is clear that Plaintiff (1) cannot plead that the general, subjective statements at issue are objectively false or misleading or otherwise actionable; and (2) has failed to meet his pleading burden on scienter. The AC fails to state a claim for both independent reasons.

### I. The Opposition Applies the Wrong Legal Standard

Plaintiff's Opposition ignores *both* the heightened pleading standard of Rule 9(b) *and* the "special fraud pleading requirements imposed" by the PSLRA. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317-18 (11th Cir. 2019). Instead, the Opposition

---

[1] References to the "Opposition" or "Opp." are to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss (Dkt. 53). Unless otherwise indicated, all capitalized terms have the same meaning as in Defendants' Motion to Dismiss the AC (Dkt. 51) (the "Motion" or "Mot."). This reply uses the citation, emphasis, and other conventions adopted in the Motion. (*See* Mot. 1 n.1.)

offers an outdated version of the *Rule 8* standard—contending that the AC cannot be dismissed unless he "can prove no set of facts" that "would entitle him to relief" (Opp. 5 (quoting standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))—that was long ago "retire[d]" by the Supreme Court. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).[2]

The Opposition likewise wrongly asserts that the Court may not consider the entirety of the documents from which the AC selectively quotes if they "undermin[e] the complaint." (Opp. 2 n.2.) This too is inconsistent with established law, which deems the entirety of such documents incorporated by reference. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024); (*see also* Mot. 1 n.1).[3]

## II.    Plaintiff Fails to Plead an Actionable Misstatement or Omission

Under the correct Rule 9(b) and PSLRA standards, Plaintiff has plainly failed to plead an actionable misstatement or omission.

*Statement About "Strong" Demand.* Like the AC, the Opposition relies heavily on a *single* statement, made once in January 2023, that "EV rental demand is very strong," quoting it four times in his brief. (Opp. 1-2, 4, 6, 12 (quoting ¶ 98).)

Plaintiff, however, all but completely ignores the unanimous case law rejecting claims involving near-identical statements. (*See* Mot. 13-18.) For example, the

---

[2] Plaintiff has since conceded that "Rule 9(b) and the PSLRA apply." (*See* Dkt. 57 at 2.)

[3] The sole authority cited by Plaintiff does not support his position. *Miranda v. Ocwen Loan Servicing, LLC* declined to consider a document because it was not actually incorporated by reference, not because it "undermined" the complaint. 148 F. Supp. 3d 1349, 1353 (S.D. Fla. 2015). Nor does the Opposition offer any support for its suggestion that the content of documents cited in the AC, and therefore incorporated by reference, is unavailable to the Court on this Motion because any document is "in dispute." (Opp. 2 n.2.)

Eleventh Circuit concluded that the statement "strong performance" was inactionable because it "is not the sort of empirically verifiable statement that can be affirmatively disproven, as it is inherently a label expressive of, and generated by, opinion." *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003). Plaintiff barely acknowledges *Next Century* and the other cases concluding that the term "strong" constitutes inactionable puffery or opinion (Mot. 12), relegating its discussion of these cases to a footnote. (Opp. 13 n.10.)[4] In that footnote, Plaintiff seeks to distinguish them as "inapposite" because they did not involve "a company's key metrics." (*Id.*) But the cases *did* involve statements about key company issues,[5] and the Opposition offers no explanation for why it would matter even if they did not. Nor has Plaintiff identified a single case—in the Eleventh Circuit or elsewhere— concluding that the term "strong" could ever support a securities fraud claim.[6] Under *Next Century* and its progeny, Plaintiff's core claim fails.

Moreover, even if "EV rental demand is very strong" were actionable, Plaintiff

---

[4] The Opposition notes *Next Century* was a "non-10(b)-5 case" (Opp. 13 n.10), but it fails to acknowledge that the Eleventh Circuit later described the analysis in *Next Century* as a "particularly good fit in the securities context." (Mot. 12 n.6.)

[5] *See, e.g.*, *Bhatt v. Tech Data Corp.*, 2018 WL 6504375, at *4 (M.D. Fla. Dec. 11, 2018) ("strong coverage model" for customer relationships); *Cambridge Ret. Sys. v. MEDNAX, Inc.*, 2019 WL 4893029, at *17 (M.D. Fla. Oct. 3, 2019) ("strong position" in the market the defendant competed in); *Thorpe v. Walter Inv. Mgmt., Corp.*, 2014 WL 11961964, at *12 (S.D. Fla. Dec. 23, 2014) ("continued strong performance" across entire company).

[6] The term "strong" does appear in a statement in a single case cited in the Opposition, *Tung v. Dycom Indus., Inc.*, 454 F. Supp. 3d 1244 (M.D. Fla. 2020). (Opp. 13.) But the court there did not find the term "strong" to be actionable; rather, the court concluded that the statement *as a whole*— "Both backlog calculations reflect strong performance *as we booked new work and renewed existing work.*"—was actionable because it addressed *other* "tangible, verifiable *actions*" that the complaint alleged to be false with the particularity required by the PSLRA. *Id.* at 1257.

3

has not alleged with the specificity required by the PSLRA that the statement was false when made in January 2023. (*See* Mot. 15-17.) Relying only on the three line-level CWs, the Opposition argues that "demand and utilization was low throughout the Class Period." (Opp. 4, 9.) But the only CW who purports to reference company-wide databases (CW1—AC ¶ 68) does not support this assertion. Instead, CW1 is alleged to have said—in a conclusory and internally inconsistent way—that "*within the first six months*" of the EV initiative, "demand *began* to decline" (¶ 65), then that it "*began* declining around six months *after* they were introduced" (¶ 67), then that it "*stayed* down *throughout* CW1's tenure." (*Id.*). Nowhere does CW1 allege what company-wide demand for EVs actually was in January 2023; how that demand compared with the CEO's expectations for company-wide demand (which a regional, line-level CW would not know); or why the CEO's subjective description of the strength of company-wide EV demand in January 2023 was objectively false.[7] Likewise, although the Opposition refers to slide decks purportedly showing "declining" EV demand *in mid-2022* (Opp. 9), the cited AC paragraphs omit the same key details, including what the slide decks purportedly said about *actual* EV demand in January 2023 (*id.* (citing ¶¶ 39-40, 75)). The remaining CWs lack any sufficient basis for their hyperbolic assertions (e.g., "there was no demand for EVs" (AC ¶ 70)). CW2 grounds his observations on individual interactions and anecdotal perceptions

---

[7] Likewise, CW1's allegation that EV utilization was 20-25% less than for non-EV vehicles is in no way inconsistent with "very strong demand" for EVs. (Mot. 16.) Mr. Scherr never purported to compare utilization of EVs in relation to non-EVs in Hertz's fleet.

4

(e.g., his "site visit" to an airport rental location months before January 2023 (AC ¶ 71)).[8] And CW3 lacks any basis to offer observations about *rental* demand since his only alleged role was to *sell* used cars, not rent them. None of this is sufficiently specific to plead falsity under the PSLRA. (Mot. 16 & n.9.)[9]

*Optimistic Statements.* The Opposition also fails to explain how any of the other generic optimistic statements about Hertz's business strategy or rental demand could be actionable under *Next Century*. (*See supra* 2-3.) In fact, Plaintiff concedes that puffery statements are actionable only "if grounded in objectively verifiable data" (Opp. 12), but he nowhere explains how any of the statements from the AC identified in Defendants' Motion (*see* Mot. 10 n.5, 11-12) assert "specific, verifiable facts that reasonable investors would rely on." (Mot. 11 (citing cases).)[10]

---

[8] The Opposition notably mischaracterizes several of the CW allegations, including the geographic scope of the CW allegations. (*Compare* Opp. 4, 9 ("utilization never exceeded 55-60%"), *with* ¶ 73 (utilization never exceed 55% to 60% "in CW2's region" and "70% to 75% of the other regions").)

[9] The Opposition tries to distinguish the cases cited in the Motion—purportedly because "CWs 1 and 2 provide hard facts that EV demand declined and stayed low" (Opp. 8 n.5)—but, as explained, the AC provides no "hard facts," just conclusory, inconsistent assertions and individual or regional anecdotes. The cases cited in the Opposition on this point *did*, by contrast, involve "specific facts." (Opp. 7); *In re Sci. Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2002); *see also Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1184-88 (S.D. Fla. 2005) (finding specificity in light of dozens of particularized factual allegations about defendant "manipulating its financial *numbers* to create an illusion of growth" including for offices that were "50% below their expected budget").

[10] Indeed, the cases cited in the Opposition all concern statements grounded in objectively verifiable data, not puffery, including statements made in response to analyst questions. (Opp. 12, 13 (citing, e.g., *Edge v. Tupperware Brands Corp.*, 2023 WL 6310236, at *2, *5 (M.D. Fla. Sept. 28, 2023) (specific statements about profitability, price increases, and "the status of the Turnaround Plan"); *Glazer Capital Mgmt. L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 770-71 (9th Cir. 2023) ("concrete description of the past and present state of the pipeline"). Similarly, Plaintiff's effort to recharacterize forward-looking statements as "historical facts" (*see* Opp. 14) is inconsistent with the very case that he cites, which explains that statements containing "both historical observations and prognostications based on those observations"—like those at issue here—qualify as forward-looking under the PSLRA. *See In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1374 (S.D. Fla. 2001).

***Company-wide Demand and Utilization****.* As set forth in the Motion, most of the allegedly misleading statements are not about EVs at all, but instead about *overall* demand and utilization. (*See* Mot. 9-11.) The Opposition does not contend these statements are false, but instead contends that they are misleading by omission because they somehow implied "demand for all business segments was strong." (Opp. 7.) But Plaintiff offers no reason why statements about company-wide demand—that were silent on EV demand—implied anything about demand for EVs, which remained a concededly small portion of Hertz's fleet (Mot. 10 n.4).[11] By contrast, *FindWhat Investor Group. v. FindWhat.com*, 658 F.3d 1282, 1306 (11th Cir. 2001) (cited in Opp. 7), concluded unremarkably that failure to disclose "grave defects" with a system rendered statements "tout[ing]" that system misleading. *Id.* at 1298-99.[12] The statements here implied nothing about any subsegment of demand.

***Statements About Charging Stations****.* The Opposition seeks to manufacture a claim, contending that Defendants promised that "Hertz [h]ad [s]ufficient EV [c]harging [s]tations." (*See* Opp. 11-12.) But in doing so, Plaintiff grotesquely distorts Defendants' actual statement, omitting key language. The statement *actually* said: "our propriety network of charging stations *continues to grow*, so as to service our fleet." (¶ 112.) Plaintiff does not claim—nor could he—that this statement was false;

---

[11] Plaintiff's assertion that the EV business "*was* 25% of Hertz's business" (Opp. 7) is wrong and inconsistent with the AC, which alleges Hertz had a *goal* for EVs to be 25% of its fleet by 2024. (¶¶ 2-3; *see also* Polubinski Decl., Ex. D (ECF No. 51-5) at 12, 16.)

[12] *In re Altisource Portfolio Solutions, S.A. Securities Litigation* (Opp. 7) did not involve an omission at all, but instead a pure false statement that an executive recused himself from related-party transactions when in fact he did not. 2015 WL 11988900, at *4 (S.D. Fla. Dec. 22, 2015).

the network did continue to grow.[13] Plaintiff instead seems to suggest that Hertz assured investors that it *already* had enough charging stations. But if anything, the statement says the opposite: the actual words make clear that Hertz *needed* to "grow" its charging stations in order to have enough to serve its fleet.[14] This is consistent with the Company's repeated warnings in SEC filings that the EV strategy might not succeed because of, *inter alia*, a "potential lack of adequate infrastructure to support EVs." (Mot. 4, 13.)

## III.    Failure to Allege Scienter Is an Independent Basis for Dismissal

The Opposition concedes that the PSLRA requires courts to weigh competing inferences to determine whether an inference of scienter is more cogent and compelling than other inferences. (*See* Mot. 18-20; Opp. 15.) But the Opposition fails to offer any cogent inference of scienter. It provides no valid reason why an executive would knowingly pursue a business strategy that was doomed to fail. Plaintiff argues that Hertz wanted to "be first to and obtain the largest share of the EV rental market." (Opp. 15.) But that makes no sense. Becoming dominant in the market would have no value if, as Plaintiff asserts, there was no demand for EV rentals. Instead, growing market share is consistent with the only rational inference that can

---

[13] Plaintiff also takes issue with the statement that Hertz was "accelerating the build-out of EV charging infrastructure" (*see* Opp. 11), but the AC does not allege that Hertz was not, in fact, accelerating the build-out of charging infrastructure.

[14] Plaintiff similarly contends Defendants represented "Hertz would not lose customers 'due to a lack of charging stations.'" (Opp. 11-12.) But Mr. Scherr never said that; to the contrary, he stated "we're *focused on*" how dissatisfaction with "*public* charging stations" could affect EV rentals and explained why he *believed* the infrastructure would improve. (*See* ¶ 129.)

be drawn in this case: that Defendants *believed* in the EV strategy as a business matter, but it simply did not work out as hoped. That is not securities fraud.

The Opposition likewise fails to support the AC's other scienter allegations.

***The Importance of EV Growth***. The Opposition ignores the cases explaining that "the PSLRA requires more" than "merely alleging" that an activity is central to a business to establish scienter. (Mot. 20.) Neither of the two cases Plaintiff cites (Opp. 18) are relevant, much less suggest otherwise.[15]

***Alleged "Admissions."*** Plaintiff's repeated assertion that Defendants "knew of the adverse facts" "earlier in 2023" (Opp. 2, 9, 16) reflects another case of grossly selective quotation, with the Opposition omitting key language that directly undermines the notion that there was any "admission." As reflected *in the AC*, Mr. Scherr said, "earlier in 2023 . . . [Hertz] mov[ed] more electric vehicles into the leisure channel to facilitate their ongoing utilization. *With hindsight*, this left leisure over fleeted with EVs." (¶ 132.) Read in full—including the words Plaintiff deleted—Mr. Scherr's statement makes clear he developed any knowledge only after the fact.[16]

***Internal Systems***. Plaintiff does not dispute that "the mere existence of an internal reporting system" is insufficient to plead scienter. (Mot. 22.) Yet the Opposition still includes only vague descriptions of internal reporting systems. (*See*

---

[15] *See Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, 1226 (S.D. Fla. 2007) (scienter based on GAAP violations); *In re Netbank, Inc. Sec. Litig.*, 2009 WL 2432359, at *5-6, *11-12 (N.D. Ga. Jan. 29, 2009) (scienter based on GAAP violations and failure to file SEC reports).

[16] *Cf. Craig v. Target Corp.*, 2024 WL 4979234, at *11 (M.D. Fla. Dec. 4, 2024), (defendant, by contrast, *was* alleged with specificity to have actually *known* of the risk of customer backlash based on his own personal prior experience with backlash involving similar strategies in the past).

Opp. 16-18.) Plaintiff has not alleged that any Individual Defendant reviewed any specific report, from any specific time period, demonstrating that any specific statement was false. This is plainly insufficient to plead scienter. *See, e.g.*, *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1264-65 (11th Cir. 2006) (no strong inference of scienter where plaintiffs did not allege what specific information was shared with which particular defendants and in what context). Moreover, his contention that "access to information" is enough is not supported by the lone case he cites, which did not concern allegations of access to internal data. *See Tupperware*, 2023 WL 6310236, at *5-6.[17]

*Management Turnover.* Plaintiff's contention that "five members of senior management departed at suspicious times" (Opp. 18-19) ignores that there is nothing suspicious about management turnover when a business strategy does not succeed. (*See* Mot. 23.) Here, the "suspicious times" coincide with struggles in Hertz's business strategy, rendering the more cogent and compelling inference that the turnover happened for business reasons, not securities fraud. (*See* Mot. 22-24.)

*Debt Covenants.* As explained in the Motion, desire to comply with debt covenants cannot support scienter (Mot. 23-24), and the Opposition's assertion that the "survival" of Hertz was at stake (Opp. 19-20) is unsupported. The AC does not

---

[17] This is apparent from the complaint in *Tupperware*, which was filed by, *inter alia*, the same lawyers representing Plaintiff in this case. *See* First Am. Class Action Compl. ¶¶ 127-45, *Edge v. Tupperware Brands Corp.*, No. 6:22-cv-1518-RBD-LHP, Dkt. 44 (M.D. Fla. Nov. 30, 2022). Moreover, *In re Sensormatic Electronics Corp. Securities Litigation* concerned internal reports specifically documenting declining sales trends that were distributed to defendants, *in addition to* "access" to data. 2002 WL 1352427, at *3-4 (S.D. Fla. June 10, 2002). No reports of that nature are alleged here.

identify what covenants would have been violated or how that would lead to a "second bankruptcy."[18] (*See* ¶¶ 188-90.) To the contrary, once the "truth" was revealed, Hertz *raised* $1 billion. (*See* ¶¶ 191-94.)

***Mr. Scherr's Incentive Compensation***. Finally, Plaintiff's argument (supported solely by Ninth Circuit case law) that Mr. Scherr's compensation package supports scienter (Opp. 20) is at odds with binding Eleventh Circuit precedent holding that "suspicious stock sales or purchases" are required to plead scienter. (Mot. 24.)

## CONCLUSION

The AC should be dismissed with prejudice.

Dated: December 23, 2024

Foley & Lardner LLP

Respectfully submitted,

Davis Polk & Wardwell LLP

| | |
|---|---|
| */s/ Michael P. Matthews* | */s/ Edmund Polubinski* |
| Michael P. Matthews (FBN 63988) | Edmund Polubinski (*admitted pro hac vice*) |
| mmatthews@foley.com | (lead counsel) |
| | edmund.polubinski@davispolk.com |
| Foley & Lardner LLP | Andrew Ditchfield (*admitted pro hac vice*) |
| 100 North Tampa Street, Suite 2700 | andrew.ditchfield@davispolk.com |
| Tampa, FL 33602-5810 | Jonathan K. Chang (*admitted pro hac vice*) |
| Telephone: (813) 229-2300 | jonathan.chang@davispolk.com |
| Facsimile: (813) 221-4210 | Deborah S. Mazer (*admitted pro hac vice*) |
| | deborah.mazer@davispolk.com |
| | |
| | Davis Polk & Wardwell LLP |
| *Attorneys for Defendants Hertz Global* | 450 Lexington Avenue |
| *Holdings, Inc., Stephen M. Scherr, and* | New York, New York 10017 |
| *Alexandra Brooks* | Telephone: (212) 450-4000 |

---

[18] Plaintiff's case is inapposite. In that case, the defendant allegedly reported false financials that satisfied the exact net worth covenant in a loan, supporting an inference that defendants had motive to falsify the financials. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 & n.8 (9th Cir. 2000).