# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | |
|---|---|
| EDWARD M. DOLLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HERTZ GLOBAL HOLDINGS, INC., STEPHEN M. SCHERR, and ALEXANDRA BROOKS,<br><br>Defendants. | Case No. 2:24-CV-00513-KCD-DNF |

## DEFENDANTS' ANSWER TO THE AMENDED COMPLAINT

Defendants Hertz Global Holdings, Inc. ("Hertz" or the "Company"), Stephen M. Scherr, and Alexandra Brooks (each, an "Individual Defendant," and together with Hertz, "Defendants"), by their undersigned counsel, hereby submit their answer and affirmative and other defenses ("Answer") to the Amended Class Action Complaint (the "Complaint") (Dkt. 50) filed by lead plaintiff Robert Stephens ("Plaintiff") in the above-referenced action (the "Action").

On October 10, 2025, the Court entered an order granting in part and denying in part Defendants' motion to dismiss the Complaint (the "MTD Order"). (Dkt. 74.) The MTD Order dismissed Plaintiff's claims based on all alleged misrepresentations or omissions purportedly identified in the Complaint with the exception of the following two statements: (i) "EV rental demand is very strong and strong across all

aspects of our business," (Compl. ¶ 98); and (ii) "We are forecasting nearly 2 million EV rentals in 2023, approximately 5x the number of the prior yeaer," (Compl. ¶ 110) (together, the "Surviving Statements"). All other alleged misrepresentations or omissions purportedly identified in the Complaint cannot form the basis of liability as a matter of law. Nothing in this Answer shall be construed inconsistently with the MTD Order.

This Answer is based upon Defendants' investigation to date, and they reserve the right to amend this Answer as their investigation continues and during the course of the litigation. Except as to those allegations that Defendants expressly admit below or those as to which Defendants lack knowledge or information sufficient to form a belief as to their truth, Defendants deny each and every allegation contained in the Complaint, including, without limitation, any footnotes, headings and subheadings, tables and figures contained therein. Defendants deny liability to Plaintiff and the putative class, that Plaintiff or the putative class has suffered any legally cognizable damages for which Defendants are responsible, or that Plaintiff or the putative class is entitled to any relief whatsoever. Pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure, allegations contained in the Complaint to which no responsive pleading is required shall be deemed denied.

No response is required to the table of contents in the Complaint. To the extent any response is required, deny.

With respect to the unnumbered Paragraphs that precede Paragraph 1 of the Complaint, admit that Plaintiff purports to bring this action under the federal

2

securities laws; admit that Plaintiff purports to include certain persons or entities that purchased Hertz stock between a period of time but deny that the alleged period is appropriate or that this Action may be maintained as a class action; deny knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to Plaintiff's personal knowledge or Lead Counsel's purported investigation; all remaining allegations and any allegations inconsistent with the foregoing are denied.

1.      Deny, except admit that Hertz is engaged principally in the business of renting vehicles primarily through its Hertz, Dollar and Thrifty brands and that, as of December 31, 2023, it operated its vehicle rental business from Company-operated and franchisee locations across approximately 160 countries and jurisdictions.

2.      Deny.

3.      Deny, except admit Hertz purchased electric vehicles ("EVs") in 2022 and 2023.

4.      Deny.

5.      Deny.

6.      Deny.

7.      Deny.

8.      Deny.

9.      Deny.

10.     Deny.

11.     This Paragraph contains a characterization of Plaintiff's claims in this Action, to which no response is required.  To the extent a response is required, deny.

3

12.    This Paragraph purports to state a legal conclusion, to which no response is required.  To the extent a response is required, deny, except admit that the Court has subject matter jurisdiction over this Action.

13.    This Paragraph purports to state a legal conclusion, to which no response is required.  To the extent a response is required, deny, except admit that venue is proper in this Court.

14.    Deny.

15.    Admit.

16.    Admit.

17.    Deny, except admit that Mr. Stephen Scherr served as CEO and a member of the Company's Board from February 2022 until March 31, 2024, that Mr. Scherr served as Chair of the Board beginning in January 2023, that Mr. Scherr worked at Goldman Sachs for nearly three decades prior to joining Hertz, that Mr. Scherr practiced law prior to joining Goldman Sachs, and that Mr. Wayne Gilbert ("Gil") West became CEO effective April 1, 2024.

18.    Deny, except admit that Ms. Alexandra Brooks served as Hertz's Executive Vice President and Chief Financial Officer from July 2023 until June 2024, that Ms. Brooks served as Senior Vice President, Chief Accounting Officer of the Company from October 2020 to July 2023, and that Ms. Brooks served as Senior Vice President, Internal Audit from June 2020 to October 2020.

19.    Deny knowledge or information sufficient to form a belief as to the allegations in this Paragraph, except admit that Mr. Darren Arrington held the title

4

of Executive Vice President, Revenue Management and Fleet Operations from September 3, 2020 to July 22, 2024, and that Mr. Arrington reported to Mr. Scherr for a portion of the purported class period.

20.    Deny knowledge or information sufficient to form a belief as to the allegations in this Paragraph.

21.    Deny knowledge or information sufficient to form a belief as to the allegations in this Paragraph.

22.    Deny, except admit that Mr. Arrington held the title of Executive Vice President, Revenue Management and Fleet Operations from September 3, 2020 to July 22, 2024, that Mr. Arrington previously served as Senior Vice President, Fleet Management, that Mr. Arrington oversaw the Revenue Management and Fleet Management teams, and that Mr. Arrington reported to Mr. Scherr for a portion of the purported class period.

23.    Deny, except admit that Hertz, through its subsidiaries, operates in two reportable business segments—Americas RAC and International RAC, that Hertz is engaged principally in the business of renting vehicles primarily through its Hertz, Dollar and Thrifty brands, and that, as of December 31, 2023, Hertz operated its vehicle rental business from Company-operated and franchisee locations across approximately 160 countries and jurisdictions.

24.    Deny, except admit that Hertz offers car rental services through its Hertz, Dollar, and Thrifty brands to provide rental services to customers at different price points, and that Hertz's profitability is primarily a function of the volume, mix

and pricing of rental transactions and the utilization of vehicles, the related ownership cost of vehicles, and other operating costs.

25. Deny, except admit that Hertz partners with certain rideshare companies to offer vehicle rentals to their drivers in select cities in North America and Europe, and that through this program customers can rent vehicles on a longer-term basis than traditional business rentals.

26. Deny, except admit that Hertz has a corporate operations function, and that Hertz assesses performance and allocates resources based upon the financial information it receives for its operating segments.

27. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

28. Deny, except admit that for the year that ended December 31, 2023, Hertz operated a peak rental fleet of approximately 467,000 in its Americas RAC segment and 124,600 in its International RAC segment, and that Hertz has financed the purchase of vehicles through global borrowing programs and cash from operations.

29. Deny, except admit that Hertz offers rentals of both internal combustion engine ("ICE") vehicles and EVs.

30. Admit.

6

31.    Deny, except admit that Vehicle Utilization, Total Revenue Per Transaction Day, Total Revenue Per Unit Per Month, and Transaction Days were key metrics in Hertz's Forms 10-K for 2022 and 2023.

32.    Deny, except admit that Hertz issued a Form 10-K for the year 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

33.    Deny, except admit that Hertz issued a Form 10-K for the year 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

34.    Deny, except admit that Hertz issued a Form 10-K for the year 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

35.    Deny, except admit that Hertz issued a Form 10-K for the year 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

36.    Deny.

37.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

38.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

39. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

40. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations, except admit that Ms. Natalie Rodriguez has worked at Hertz since July 2004, that Ms. Rodriguez held the title of Senior Director, Revenue Management from November 2016 to January 2023, and that Ms. Rodriguez has held the title of Vice President, Revenue Management since January 2023.

41. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations, except admit that Ms. Tamara Branham is Hertz's Director of Transportation.

42. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

43. Deny.

44. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

45.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

46.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

47.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

48.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

49.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

50.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

51.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

52.     Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

53.     Deny.

54.     Deny, except admit that Hertz held an earnings call on or about August 1, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

55.     Deny.

56.     Deny, except admit that Hertz published a press release on or about October 25, 2021, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

57.     Admit that Hertz published a press release on or about October 25, 2021, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

58.     Deny, except admit that Hertz published a press release on or about April 4, 2022, and that Bloomberg published an interview of Mr. Scherr on or about April 4, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of those documents.

59.     Deny, except admit that Hertz issued a Proxy Statement on or about April 8, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

60.    Deny.  To the extent the purported quotation is from a published source, absent a citation, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations.

61.    Deny, except admit that Hertz published a press release on or about September 20, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

62.    Deny, except admit that CNN published an interview of Mr. Scherr on or about November 4, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

63.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

64.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

65.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

66.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

67.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

68.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

69.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

70.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

71.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

72.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

73.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

74.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

75.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

76.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

77.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

78.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

79.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

80.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

81.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

82.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

83.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

84.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

85.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

86.    Deny.

87.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

88.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

89.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

90.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

91.    Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

92.    Deny.

93.    Deny, except admit that Hertz issued a Form 8-K on or about January 11, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

94.    Deny, except admit that Hertz issued a press release on or about March 15, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

95.    Deny, except admit that Hertz published a press release on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

15

96.   Deny, except admit that Hertz issued a Form 8-K on or about June 3, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

97.   Deny.

98.   Deny, except admit that Mr. Scherr participated in an interview with CNBC on or about January 6, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

99.   Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

100.   By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny, except admit that Hertz held an earnings call on or about February 7, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

101.   By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very

strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

102. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that Hertz held an earnings call on or about February 7, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

103. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny knowledge or information

17

sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

104.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny, except admit that Hertz held an earnings call on or about February 7, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

105.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

106.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023

18

statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that CNBC published an interview of Mr. Scherr on or about February 7, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

107. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

108. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that CNBC published an interview of Mr. Scherr on or about April 4, 2023, but deny the

19

accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

109. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

110. Deny, except admit that Hertz held an earnings call on or about April 27, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

111. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

112. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is

20

required.  To the extent a response is required, deny, except admit that Hertz held an earnings call on or about April 27, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

113.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

114.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny, except admit that Hertz held an earnings call on or about April 27, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

115.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

116.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny, except admit that Hertz held an earnings call on or about July 27, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

117.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is

22

required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

118.  By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that Hertz held an earnings call on or about July 27, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

119.  By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that Hertz held an earnings call on or about July 27, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

23

120. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

121. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that CNBC published an interview of Mr. Scherr on or about July 27, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

122. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is

24

required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

123. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that Mr. Scherr appeared at a conference on or about August 10, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of the transcript of that conference.

124. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

125. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very

strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that Mr. Scherr appeared at a conference on or about August 10, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of the transcript of that conference.

126. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

127. By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required. To the extent a response is required, deny, except admit that CNBC published an interview of Mr. Scherr on or about August 16, 2023, but deny the

26

accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

128.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

129.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny, except admit that CNBC published an interview of Mr. Scherr on or about August 16, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

130.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023

27

statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

131.   Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

132.   Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

133.   Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

134.   Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

135.    Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

136.    Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

137.    Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

138.    Deny, except admit that Hertz's stock price closed at $10.12 per share on October 25, 2023, that Hertz's stock price closed at $9.04 per share on October 26, 2023, and that Hertz's stock price closed at $8.62 per share on October 27, 2023.

139.    Deny, except admit that Hertz issued a Form 8-K on or about January 11, 2024, and issued a Form 10-K for the year 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of those documents.

29

140. Deny, except admit that Hertz issued a Form 8-K on or about January 11, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

141. Deny, except admit that Hertz issued a Form 8-K on or about January 11, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

142. Deny, except admit that CNBC published an interview of Mr. Scherr on or about January 11, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

143. Deny, except admit that Hertz's stock price closed at $9.35 per share on January 10, 2024, and that Hertz's stock price closed at $8.34 per share on January 12, 2024.

144. Deny, except admit that Hertz issued a Form 8-K on or about February 6, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

145. Deny, except admit that Hertz held an earnings call on or about February 6, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

146.   Deny, except admit that Hertz published a press release on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

147.   Deny, except admit that Hertz held an earnings call on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

148.   Deny, except admit that Hertz held an earnings call on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

149.   Deny, except admit that Hertz held an earnings call on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

150.   Deny.

151.   Deny, except admit that Hertz held an earnings call on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

152.   Deny, except admit that Hertz's stock price closed at $4.68 per share on April 25, 2024.

153. Deny, except admit that Hertz published a press release on or about June 3, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

154. Admit that Hertz published press releases on or about June 20, 2024 and June 21, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of those documents.

155. Deny, except admit that Hertz published a press release on or about July 8, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

156. Deny, except admit that Hertz held an earnings call on or about August 1, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

157. Deny.

158. Deny, except admit that Hertz published a press release on or about October 25, 2021, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

159. Admit that Hertz published a press release on or about October 25, 2021, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

160.   Admit that Bloomberg published an interview of Mr. Scherr on or about April 4, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

161.   Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

162.   Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

163.   Deny.

164.   By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny.

165.   By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023,

approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny.

166.   By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny.

167.   Deny.

168.   Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

169.   Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

170.   Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

171.   Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

172.   Deny.

173. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations.

174. Deny, except admit that Bloomberg published an interview of Mr. Scherr on or about April 4, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that interview.

175. Deny, except admit that Hertz held an earnings call on or about August 1, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

176. Deny.

177. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employees made these statements, and deny all remaining allegations, except admit that Hertz holds quarterly Global Townhall meetings in the cafeteria at the Company's corporate headquarters in Estero, Florida, that these meetings are held on the days that Hertz releases its quarterly earnings to the market, and that everyone at the Company can attend either in person or via video.

178. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

179. Deny, except admit that Mr. Scherr and Ms. Brooks had a practice of being informed prior to making statements about Hertz.

180. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations, except admit that Mr. Arrington reported to Mr. Scherr for a portion of the purported class period.

181. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

182. Deny.

183. Deny.

184. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

185. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, and deny all remaining allegations.

186. Deny, except admit that Hertz published press releases on or about March 27, 2023, September 13, 2023, March 15, 2024, and June 3, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of those documents.

187. Deny.

188. Deny.

189. Deny knowledge or information sufficient to form a belief as to whether the unidentified anonymous former employee made these statements, deny knowledge or information sufficient to form a belief as to the truth of the allegations about Tesla's actions, and deny all remaining allegations.

190. Deny.

191. Deny.

192. Deny, except admit that Hertz published press releases on or about June 20, 2024 and June 21, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of those documents.

193. Admit that Hertz held an earnings call on or about August 1, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

194. Deny.

195. Deny, except admit that Hertz and Mr. Scherr entered into an employment agreement on or about February 3, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that employment agreement.

196. Deny, except admit that Hertz and Mr. Scherr entered into an employment agreement on or about February 3, 2022, but deny the accuracy of any

37

purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that employment agreement.

197. Deny, except admit that the Financial Times published an article on or about February 4, 2022, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that article.

198. Deny.

199. Deny.

200. Deny.

201. Deny.

202. Deny, except admit that Hertz held an earnings call on or about October 26, 2023, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

203. Deny.

204. Deny, except admit that Hertz's stock price closed at $10.12 per share on October 25, 2023, that Hertz's stock price closed at $9.04 per share on October 26, 2023, and that Hertz's stock price closed at $8.62 per share on October 27, 2023.

205. Deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the understanding of unspecified "[a]nalysts," and admit that J.P. Morgan published a report on or about October 26, 2023, but deny

the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that report.

206.   Deny, except admit that Hertz published a press release on or about January 11, 2024, and that CNBC published an interview of Mr. Scherr on or about January 11, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of those documents.

207.   By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny.

208.   Deny, except admit that Hertz's stock price closed at $9.35 per share on January 10, 2024, and that Hertz's stock price closed at $8.34 per share on January 12, 2024.

209.   Deny, and deny knowledge or information sufficient to form a belief as to the truth of the allegations of unspecified "[a]nalysts."

210.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the understanding of unspecified individuals at Deutsche Bank, and admit that Deutsche Bank published a report on or about

January 12, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that report.

211.    Deny, except admit that Oppenheimer published a report on or about January 11, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that report.

212.    Deny, except admit that Hertz published a press release on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that document.

213.    Deny, except admit that Hertz held an earnings call on or about April 25, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that earnings call.

214.    By its October 10, 2025 Order, the Court dismissed all claims unrelated to Mr. Scherr's alleged January 6, 2023 statement that EV rental demand was very strong and strong across all aspects of Hertz's business and his alleged April 27, 2023 statement that Hertz was forecasting nearly 2 million EV rentals in 2023, approximately five times the number of the prior year; therefore, no response is required.  To the extent a response is required, deny.

215.    Deny, except admit that Hertz's stock price closed at $4.68 per share on April 25, 2024.

216.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning unspecified "[a]nalysts," and admit that J.P.

40

Morgan published a report on or about April 26, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that report.

217.    Deny, except admit that Deutsche Bank published a report on or about April 29, 2024, but deny the accuracy of any purported quotation or citation as to any allegation that is inconsistent with or an incomplete recitation of that report.

218.    Deny.

219.    Deny, and deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning unspecified "analysts and media," except admit that Hertz is listed and traded on the NASDAQ, that Hertz files public reports with the SEC, that Hertz at times communicates with the public through press releases, and that Hertz's stock traded at an average daily volume of 3,976,403 shares between January 6, 2023 and April 24, 2024.

220.    Deny.

221.    Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations specific to Plaintiff and other unidentified members of the purported class.

222.    This Paragraph purports to state a legal conclusion, to which no response is required.  To the extent a response is required, deny.

223.    Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations specific to Plaintiff and other unidentified members of the purported class.

224. Deny.

225. Deny.

226. Deny.

227. This Paragraph describes the purported nature of this Action, to which no response is required. To the extent a response is required, deny, except admit that Plaintiff seeks to bring this action as a class action.

228. Deny, except admit that members of the putative class are sufficiently numerous that joinder is impracticable, and that Hertz had 305,296,256 shares outstanding as of February 7, 2024.

229. Deny.

230. Deny.

231. Deny.

232. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph.

233. Deny.

234. Deny.

235. Defendants repeat and reincorporate each and every response to the allegations above, as if set forth herein.

236. This Paragraph contains a description of this litigation and Plaintiff's claims, to which no response is required. To the extent a response is required, deny.

237. Deny.

238. Deny.

239.    Deny.

240.    Defendants repeat and reincorporate each and every response to the allegations above, as if set forth fully herein.

241.    This Paragraph contains a description of this litigation and Plaintiff's claims, to which no response is required.  To the extent a response is required, deny.

242.    Deny.

243.    Deny.

244.    Deny.

245.    Deny.

246.    Deny.

247.    Deny.

248.    Deny.

Except as otherwise explicitly admitted herein, Defendants deny each and every allegation and heading contained in the Amended Complaint, including Plaintiff's Prayer for Relief, the Wherefore clause and paragraphs (A)-(E) of the Prayer for Relief, and Plaintiff's demand for a jury trial, and put Plaintiff to strict proof thereof.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants have not completed their full investigation of the facts of this case, have not completed discovery in this matter, and have not completed their preparation for trial.  The defenses asserted herein are based on Defendants' knowledge, information, and belief at this time.  Defendants specifically reserve the

right to assert additional affirmative or other defenses and/or to modify, amend, or supplement any defense contained herein at any time. Without admitting any of the facts alleged in the Complaint or assuming any burden of proof, persuasion, or production not otherwise legally assigned to them as to any element of Plaintiff's claims, Defendants assert the following affirmative and other defenses:

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants did not make any statements that were false or misleading when made, or omit to state any material facts necessary to make any statements made by Defendants false or misleading.

## THIRD DEFENSE

Plaintiff's claims fail to the extent that they are based on forward-looking statements that were either accompanied by meaningful cautionary language or made without actual knowledge that those statements were false or misleading. 15 U.S.C. § 78u-5(c).

## FOURTH DEFENSE

Plaintiff's claims fail, in whole or in part, because Defendants lacked the required fraudulent intent or scienter necessary to establish violations of the securities laws.

44

**FIFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the "bespeaks caution" doctrine.

**SIXTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the Surviving Statements were not material to the investment decisions of a reasonable investor in view of, *inter alia*, the total mix of available information.

**SEVENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because certain of the Surviving Statements are non-actionable statements of puffery.

**EIGHTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because certain of the Surviving Statements contain expressions of opinion that Plaintiff has not alleged, and cannot prove, were not truly held or are otherwise actionable.

**NINTH DEFENSE**

Plaintiff cannot satisfy the prerequisites set forth in Rule 23 of the Federal Rules of Civil Procedure to maintain this Action as a class action.

**TENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any legally cognizable injury or damages as a result of Defendants' conduct.

**ELEVENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the Surviving

Statements did not affect the market price of Hertz's common stock.

**TWELFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the alleged corrective

disclosures did not disclose any previously withheld truth.

**THIRTEENTH DEFENSE**

To the extent that Plaintiff or a member of the alleged class incurred any

injury or damage as alleged in the Complaint, which is denied, any such injury or

damage was caused and brought about by other factors, including, but not limited to,

market-wide phenomena, economic factors, and/or the acts, conduct, or omissions

of individuals and/or entities other than Defendants that intervened between

Defendants' alleged actions and the alleged harm.  Accordingly, any recovery should

be precluded or diminished in proportion to the amount of fault attributable to other

factors.

**FOURTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the injuries allegedly

sustained were caused by the actions or inactions of parties other than Defendants,

actions or inactions by parties outside the control of Defendants, and/or economic

events that were, likewise, outside the control of Defendants.  These actions,

46

inactions, and events were intervening or superseding causes of the damages alleged in the Complaint.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because no act or omission by any Defendant was the cause in fact or proximate cause of any damage alleged by Plaintiff.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because, and to the extent that, Plaintiff's loss, if any, was not caused by any alleged misrepresentation or omission by Defendants.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants did not employ any device, scheme, or artifice to defraud.

## EIGHTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants did not engage in any act, practice, or course of business that operated or would operate as a fraud or deceit.

## NINETEENTH DEFENSE

Plaintiff's claims under Section 20(a) of the Exchange Act are barred because Mr. Scherr and Ms. Brooks at all times acted in good faith, and did not directly or indirectly induce the alleged acts underlying Plaintiff's claims.

## TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any alleged damages suffered by Plaintiff, which Defendants deny, are speculative.

## TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants acted with reasonable care with respect to the Surviving Statements.  Defendants had reasonable ground to believe, and did believe, at the time of the Surviving Statements that those statements were true and did not contain omissions of material fact.

## TWENTY-SECOND DEFENSE

To the extent Plaintiff suffered damages, if at all, such damages must be capped pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(e)(1).

## TWENTY-THIRD DEFENSE

Plaintiff cannot recover against Defendants, in whole or in part, because the "fraud on the market" theory of reliance or other presumption of reliance is unavailable, and Plaintiff is otherwise unable to establish that he relied upon the purported misstatements and omissions alleged in the Complaint.

## TWENTY-FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because, and to the extent that, any relief or recovery would unjustly enrich or constitute a windfall to Plaintiff.

## TWENTY-FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants are not liable to Plaintiff for any claims based on alleged misrepresentations or omissions for which Plaintiff and/or its agents, financial representatives, and/or broker-dealers had, in whole or in part, actual or constructive knowledge.

## TWENTY-SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, insofar as they are based on alleged conduct that concluded before, or began after, Plaintiff's purchases of Hertz's common stock.

## TWENTY-SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff and members of the alleged class, including those who did not purchase Hertz common stock, lack standing to assert federal securities fraud claims against Defendants.

## TWENTY-EIGHTH DEFENSE

Defendants have not knowingly and intentionally waived any applicable additional defenses, and reserve the right to raise any additional defenses not asserted herein of which they become aware at any subsequent stage of this action, including, but not limited to, the right to assert as a defense their reliance on the advice of counsel.  Defendants further reserve the right to amend their Answer and Defenses accordingly and to delete defenses that they determine are not applicable during the course of discovery.

49

## PRAYER

WHEREFORE, Defendants respectfully request that the Court:

A. Deny class certification and strike all class allegations from the Complaint;

B. Render judgment that Plaintiff take nothing by this suit;

C. Dismiss the Complaint with prejudice;

D. Award Defendants their costs of court and other fees; and

E. Grant any other just and proper relief to which Defendant may be entitled.

Dated: November 14, 2025

/s/ *Michael P. Matthews*

**FOLEY & LARDNER LLP**
Michael P. Matthews (FBN 63988)
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Telephone: (813) 229-2300
Facsimile: (813) 221-4210
Email: mmatthews@foley.com

/s/ *Edmund Polubinski*

**DAVIS POLK & WARDWELL LLP**
Edmund Polubinski *admitted pro hac vice*
(lead counsel)
Andrew Ditchfield *admitted pro hac vice*
Charlotte M. Savino *admitted pro hac vice*
Deborah S. Mazer *admitted pro hac vice*
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
Email: edmund.polubinski@davispolk.com
Email: andrew.ditchfield@davispolk.com
Email: charlotte.savino@davispolk.com
Email: deborah.mazer@davispolk.com

Jonathan K. Chang *admitted pro hac vice*
900 Middlefield Road, Suite 200
Redwood City, CA 94063
Tel: (650) 752-2000
Email: jonathan.chang@davispolk.com

*Attorneys for Defendants Hertz Global Holdings, Inc., Stephen M. Scherr, and Alexandra Brooks*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 14, 2025, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

*/s/ Edmund Polubinski*
Edmund Polubinski