**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| EDWARD M. DOLLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HERTZ GLOBAL HOLDINGS, INC., STEPHEN M. SCHERR, AND ALEXANDRA BROOKS,<br><br>Defendants. | Case No. 2:24-cv-00513-KCD-KRH |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiff Robert Stephens, individually and behalf of all Settlement Class Members[1] consisting of all Persons and entities who purchased or otherwise acquired Hertz common stock between January 6, 2023 and April 24, 2024, inclusive,[2] respectfully moves for preliminary approval of the proposed $10 million all-cash Settlement to resolve this Action. This motion is supported by the memorandum of law herein, the Declaration of Gregory M. Potrepka ("Potrepka Decl."), and exhibits thereto ("Ex.").

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation of Settlement, dated May 15, 2026 ("Stipulation" or "Stip."). All emphasis is added and internal citations, quotations, and alterations are omitted unless otherwise noted.

[2] Excluded from the Settlement Class are: (a) Defendants; (b) members of the immediate families of Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person who is an officer, director or controlling person of Hertz; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors or assigns of any such excluded party. Also excluded from the Settlement Class are any Persons who timely and properly request to be excluded.

## I. SUMMARY OF RELIEF REQUESTED AND BASIS FOR REQUEST

The proposed Settlement (Potrepka Decl., Ex. 1) resulted from arms'-length negotiations between experienced counsel, including a full day mediation before Jed D. Melnick, Esquire of JAMS. Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate, balancing the aim of securing full recovery against the significant risks of less or no recovery if the Action continued.

Plaintiff requests the Court enter the Parties' stipulated [Proposed] Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), Stip. Ex A, thereby: (i) preliminarily approving the Settlement; (ii) certifying the Settlement Class, and appointing Plaintiff as class representative and Lead Counsel as class counsel for settlement purposes; (iii) approving Angeion Group, LLC ("Angeion") as Claims Administrator; (iv) approving the proposed form, content, and dissemination of the Longform Notice (including the Plan of Allocation), Publication Notice, Postcard Notice, and Claim Form, (Exs. B–E to the Stipulation), as the best notice practicable and in compliance with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) setting a schedule for providing Notice to the Settlement Class, the filings of Plaintiff's motion for final settlement approval and Lead Counsel's Fee and Expense Application, and Settlement Class Members' submissions of Claim Forms, Requests for Exclusion, and objections; and (vi) setting a date certain for the Final Approval Hearing.

The Settling Parties reached the proposed Settlement after nearly two years of

litigation, with a full understanding of the benefits and risks of further litigation, during which Lead Counsel, *inter alia*: (i) conducted an investigation into the allegedly wrongful acts, including by retaining a private investigator; (ii) drafted the Amended Class Action Complaint; (iii) successfully opposed Defendants' motion to dismiss; (iv) pursued fact discovery, which included serving and responding to party and third-party discovery requests and interrogatories; (v) managed attorneys who reviewed and analyzed over 192,700 pages of documents; (vi) moved for class certification; (vii) consulted with experts on the issues of damages, loss causation, and stock market efficiency; (viii) prepared a detailed mediation statement addressing both liability and damages; (ix) participated in a formal full day, in-person mediation session before an experienced mediator; (x) negotiated the terms of the proposed Settlement; and (xi) prepared the Stipulation and exhibits, including the proposed Plan of Allocation made in consultation with an experienced damages expert.

## II. FACTUAL SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. Procedural History of the Action

On May 31, 2024, Edward M. Doller filed a complaint against Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act for alleged misstatements between April 27, 2023 and April 24, 2024. On August 14, 2024, the Court appointed Robert Stephens as Lead Plaintiff under the PSLRA, and approved Levi & Korsinsky, LLP as Lead Counsel. Plaintiff filed his Amended Class Action Complaint ("Complaint" or "Compl.") on September 30, 2024, which expanded the class period to January 6, 2023 through April 24, 2024. ECF No. 50.

The Complaint alleges Defendants made misstatements concerning demand for, and forecasted rentals of, electric vehicles ("EVs"). Defendants allegedly revealed the truth in part on October 26, 2023, when Hertz announced that it had underperformed in Q3 2023 due in part to lack of demand for EVs. On this news, Hertz's common stock price suffered a total two-day decline of 14.82%, from a closing price of $10.12 per share on October 25, 2023 to a close of $8.62 per share on October 27, 2024.

Plaintiff alleges Defendants further revealed the truth in part on January 11, 2024, when Hertz announced that: (i) it was selling 20,000 EVs to "better balance supply against expected demand of EVs"; and (ii) the Company's "Adjusted Corporate EBIDTA for the fourth quarter of 2023" would "be negatively impacted by the incremental net depreciation expense associated with the EV sales plan…" and declining EV residual values. In an interview the same day, Defendant Scherr stated the EV sales reflected "the reality" of EV demand, and that Defendants had gotten "ahead of ourselves" on EV demand. Hertz common stock declined 10.80% over two days, from $9.35 per share on January 10, 2024 to $8.34 per share on January 12, 2024.

Plaintiff alleges a final corrective disclosure on April 25, 2024 when Hertz announced Q1 2024 results, including: (i) that vehicle depreciation increased during Q1 due to declining EV residual values from a lack of EV demand; (ii) a $195 million charge to vehicle depreciation relating to EVs; (iii) that Hertz experienced declining utilization due to EV "overfleeting"; and (iv) plans to sell an additional 10,000 EVs. Hertz's common stock fell $1.12, to close at $4.68 per share on April 25, 2024.

From the outset of the Action, Defendants have consistently denied any

wrongdoing, liability, or damages. Defendants filed a motion to dismiss the Complaint, which the Court granted in part and denied in part on October 10, 2025. ECF No. 74.

In discovery, Plaintiff served thirty-nine requests for production and one interrogatory on Defendants, and subpoenas *duces tecum* on thirty third parties. As a result, Plaintiff has received more than 164,600 pages of documents from Hertz, and over 32,100 pages of documents from third parties. Further, Defendants served two sets of requests for production, containing thirty-five requests in total, and ten interrogatories on Plaintiff, which Plaintiff responded and objected to.

On March 12, 2026, the Settling Parties participated in a full-day mediation session presided over by Jed D. Melnick of JAMS, in advance of which the parties exchanged lengthy mediation statements and exhibits. The session ended with the mediator making a double-blinded proposal to settle the Action, which the parties agreed to, pending memorialization of a term sheet and execution of the Stipulation.

On March 13, 2026, Plaintiff filed his motion for class certification, appointment of class representative, and appointment of class counsel. ECF No. 108. Later that day, the Settling Parties executed the Term Sheet regarding settlement.

On March 18, 2026, the Court entered an order staying the Action pending resolution of the settlement approval process. ECF No. 111. The Parties thereafter negotiated the Stipulation's terms and executed same on May 15, 2026.

**B. Summary of Key Terms of the Proposed Settlement**

1. Relief to Settlement Class Members and Release of Claims

Defendants agreed to pay, or to cause to be paid on their behalf, $10,000,000 in

cash, in return for a release of claims that have or could have been asserted in this Action. The Settlement is "non-reversionary"—*i.e.*, if the Settlement is approved, none of the Settlement Amount will revert to Defendants or their insurance carriers.

2. Notice to the Settlement Class

Within twenty-one (21) days of the Preliminary Approval Order, the Claims Administrator shall cause the Postcard Notice, substantially in the form annexed to the Stipulation as Ex. D, to be mailed to all Settlement Class Members who can be identified with reasonable effort. Within twenty-eight (28) calendar days of the Preliminary Approval Order, Lead Counsel shall cause the Publication Notice to be published electronically once over a national newswire service, since the Internet is the medium most frequently accessed by investors, and is the most cost-effective.

The Longform Notice (Ex. B to the Stipulation) describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiff to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed Plaintiff Compensatory Award.[3] The Longform Notice, Proof of Claim, and Stipulation will be posted on a website dedicated to the Settlement.

The Longform Notice will also set forth the date of the Final Approval Hearing, as well as procedures for objecting to, or opting out from, the Settlement. Plaintiff

[3] The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to any "representative party serving on behalf of [the] class." 15 U.S.C. § 78u-4(a)(4).

requests that the Court schedule the Final Approval Hearing for 100 days after entry of the Preliminary Approval Order, so as to allow: (i) Postcard Notice mailing within twenty-one (21) days; (ii) Settlement Class members to have fifty-eight (58) days to submit a Claim Form, object, or opt out; (iii) CAFA notice under 28 U.S.C. § 1715; and (iv) briefing for final approval and the Fee and Expense Application.

3. Settlement Administration

Following issuance of a Request for Proposal and competitive bids submitted by well-regarded class action claims administrators, Lead Counsel selected Angeion to administer the Notice and process Settlement claims. Potrepka Decl. ¶2. Angeion is highly experienced in such administration. Potrepka Decl., Exs. 5–6.

4. Opportunity for Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so twenty-one (21) calendar days prior to the Final Approval Hearing and send copies of such objections to the Court, Lead Counsel, and Defendants' Counsel, along with documentary evidence of transactions in Hertz common stock. Any Settlement Class Member who does not file a timely objection shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

5. Opportunity for Exclusion (Opt-Outs)

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by Hertz transaction documentation, postmarked no later than twenty-one days (21) prior to the Final Approval Hearing. The Request for Exclusion must be sent to Lead Counsel, Defendants' Counsel, and Angeion (but not the Court).

6. Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a negotiated threshold of Hertz's outstanding common stock shares elect to opt out of the Settlement Class. The threshold amount is set forth in a Supplemental Agreement. *See* Section III(B)(7), *infra*. In the event the Court does not approve the Settlement or the Settlement does not become effective, the Settling Parties will return to their respective positions as of March 13, 2026.

7. No Admission of Liability

By entering into the Stipulation, Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) requires court approval to settle a class action. Fed. R. Civ. P. 23(e). "Public policy strongly favors the pretrial settlement of class action lawsuits." *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009). Securities fraud class actions in particular "readily lend themselves to settlement." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (collecting cases). Given that the Eleventh Circuit "expresses a strong preference towards settlement of class litigation, if compliant with the requirements of Rule 23, courts should approve class settlement if the terms are fair, adequate, reasonable, and not the product of collusion." *Cook v. Gov't Emps. Ins. Co.*, 2020 WL 14087606, at *5 (M.D. Fl. Jun. 22, 2020).

Courts approve settlements under Rule 23(e) if, like here, the proposed class was adequately represented, the settlement was negotiated at arms' length, the relief

to the class is adequate under four Rule 23(e)(2)(C) factors, and the settlement treats class members equitably. *Id*; *see also* Fed. R. Civ. P. 23(e)(2)(A)–(D); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 985–88 (11th Cir. 1984) (describing overlapping *"Bennett"* factors).[4] Rule 23(e) also outlines procedures for providing notice of proposed settlement to the class. Fed. R. Civ. P. 23(e)(1). To effectuate such notice, courts take a "two-step" approach: first, requiring preliminary approval to determine whether to disseminate notice to the class and, second, holding a final approval hearing. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

The preliminary approval stage requires the Court to determine whether: (1) the settlement has no obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *Id.* (settlement "should be preliminarily approved if it is within the range of possible approval[,]" and thus "there is probable cause to notify the class of the proposed settlement"); *In re Checking Account Overdraft Litig.*, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) (approval appropriate where settlement resulted from "good faith negotiations," has "no obvious deficiencies" and "falls within the range of reason").

Following preliminary approval, the class is notified of the proposed settlement

---

[4] The *Bennett* factors include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

and a final approval hearing is set. *See*, *e.g.*, *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) (when granting preliminary approval, "the court should direct that notice issue and should schedule a final approval hearing."); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,* 2024 WL 1554329, at *8 (S.D. Fla. Apr. 10, 2024) (granting preliminary approval and setting final hearing after class notice).

Herein, Plaintiff reviews all Rule 23(e) and *Bennett* factors for completeness and to preview the final approval analysis. *But c.f.*, *Pierre-Val v. Buccaneers, Ltd. P'ship*, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (preliminary approval "requires only an initial evaluation of the fairness of the proposed settlement"). Each factor demonstrates the Settlement is fair, reasonable, adequate, free from obvious deficiencies, and the result of vigorous negotiation, warranting preliminary approval.

### A. Rule 23(e)(2)(A) and (B): The Settlement Has No Obvious Deficiencies and Resulted from Good-Faith, Arms'-Length Negotiations by Able Counsel

When evaluating a settlement for approval, courts place considerable weight on the "judgment of experienced counsel[.]" *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x. 843, 845 (11th Cir. 2011); *see also Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) (finding "[c]ounsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence" favoring approval, and affording "great weight" to recommendations of counsel with "considerable experience"). Therefore, "[a] presumption of fairness…may attach" to settlements negotiated at arm's length by informed and experienced counsel. *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

In the instant Action, the Settling Parties reached the Settlement only after vigorous litigation and discovery. The Settlement was reached after the Action was well into the discovery process, during which Plaintiff received over 192,700 pages of documents from Defendants and third parties, and after Plaintiff had prepared a motion for class certification, including consultation with experts on damages. As such, Lead Counsel and Plaintiff were well aware of the claims, defenses, and litigation risks when negotiating the Settlement. *See, e.g., In re Health Ins. Innovations Secs. Litig.*, 2020 WL 10486665, at *7 (M.D. Fl. Oct. 21, 2020) *report and recommendation adopted*, 2020 WL 10486666 (M.D. Fla. Nov. 19, 2020) ("*Health Ins. Innovations I*") (finding "Rule 23(e)(2)(A)[] is satisfied because Lead Plaintiff and Lead Counsel have vigorously represented the Class"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents, and consultation with experts).

This Settlement, moreover, has no obvious deficiencies. The proposed Settlement is the result of arms'-length negotiations between highly experienced Lead Counsel and Defendants' Counsel, with the assistance of an experienced mediator which included a formal, full-day mediation. *See, e.g., City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, at *3–4 (S.D. Fla. Aug. 24, 2016) (mediation with Mr. Melnick supported proposed settlement's approval). In negotiating the Settlement, Plaintiff had the benefit of Lead Counsel, which is highly experienced in complex securities class action litigation and familiar with the legal and factual issues in the case. *See* Potrepka Decl., Ex. 2. In Lead Counsel's view, the Settlement provides an

excellent result for the Settlement Class, especially in light of the risk of recovering far less or nothing if the litigation were to continue. Moreover, that the Settlement is the product of an adversarial process supports preliminary approval. *Checking Account,* 275 F.R.D. at 662 (approving settlement that was "the product of informed, good-faith, arms'-length negotiations between the parties" through a qualified mediator).

For the foregoing reasons, the Settlement satisfies Rule 23(e)(2)(A) and (B).

### B. The Proposed Settlement Satisfies all *Bennett* Factors and Remaining Rule 23(e)(2) Requirements, and is Fair, Adequate, and Reasonable

1. <u>*Bennett* Factors 1 and 4 and Rule 23(e)(2)(C)(i): The Likelihood of Success at Trial, the Complexity, Expense, and Duration of Continued Litigation, and the Risks and Delay of Trial and Appeal Support Approval</u>

Plaintiff believes that the claims asserted in the Complaint are meritorious, and that the evidence adduced to date supports his claims. However, Plaintiff also recognizes that continued litigation in the Action would be complex, costly, risky, and lengthy. Indeed, "there is an overriding public interest in favor of settlement because it is common knowledge that class action suits have a well deserved reputation as being most complex[,]" *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005), and this Action likewise involves intricate issues of securities law and an extensive record, making it extremely risky to proceed. *See also, e.g., Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008) ("Securities litigation generally involves complex issues of fact and law").

Specifically, while Plaintiff is confident that he could prove his fraud and control person claims for the two remaining alleged misstatements, falsity and scienter

elements present complex issues of proof, posing significant risks to recovery. Indeed, while Plaintiff contends that Defendant Scherr's statement in January 2023 that EV rental demand was "very strong … across all aspects" of Hertz's business was false because of utilization that had declined in 2022 and stayed down[,]" Complaint ¶¶98–99, Defendants would argue the statement was literally true as measured by "on rent" metrics, and that utilization is an inapt measurement. Defendants would also surely continue to argue that the forecast in the second statement surviving dismissal, *id.* ¶110, was met, and that Scherr lacked a fraudulent state of mind for either statement. Plaintiff's inability to establish either an actionable false or misleading statement or omission, or Defendants' scienter relating thereto, could doom Plaintiff's claims.

Furthermore, Plaintiff would need to prove both loss causation and damages across all three alleged partial corrective disclosures. Specifically, Defendants argued and would likely continue to argue that: (i) the October 26, 2023 disclosures, *id.* ¶¶132–137, revealed the full truth (thus rendering inactionable the latter disclosures); or, alternatively, (ii) the January 11, 2024 and April 25, 2024 disclosures were partially and wholly unrelated to the alleged misstatements, respectively, and instead concerned EV repair costs and depreciation which was not corrective information. Regardless of which disclosures Plaintiff could prove as corrective, Plaintiff would have to successfully disaggregate the amount of any share price declines following the alleged corrective disclosures was specifically related to EV demand and forecasts thereof. Defendants' success on these arguments would present significant risks to damages that Plaintiff could prove at trial, if any. *See Gutter v. E.I. Dupont De Nemours & Co.*,

2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in [ ... ] securities litigation, particularly the risks associated with establishing … causation and damages favor approval of the [s]ettlement").

Further, if the Action had continued, Plaintiff would still need to achieve class certification (which would require navigating complex issues such as price impact and Plaintiff's reliance), complete complex fact and expert discovery, withstand summary judgment and pre-trial motions (likely involving a battle of the experts and *Daubert* challenges), prepare for and succeed at trial, litigate post-trial motions, and withstand appeals—which collectively pose no small task, would take years to complete, and would cost millions of dollars in expenses that would deteriorate any class fund. *See Coca-Cola*, 2008 WL 11336122 at *8 ("[t]he reaction of a jury to [] expert testimony [in securities cases] is highly unpredictable"); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (granting final approval, noting "ongoing discovery and trial preparation would have substantially increased costs to the Class").

By contrast, the Settlement provides certain relief without such delays or risks. *See Millstein v. Holtz*, 2022 WL 18024840, at *3, *6 (S.D. Fla. Dec. 30, 2022) (in class actions, settlement avoids "the inherent costs, delays and risks" that "might otherwise overwhelm any potential benefit" to the class, who could end up "recovering nothing"); *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ("*Health Ins. Innovations II*") ("there is an inherent risk in any litigation but particularly so in securities class action litigation"); *Hall v. Bank of Am., N.A.*, 2014 WL

7184039, at *4 (S.D. Fla. Dec. 17, 2014) ("class certification proceeding, a class trial and the appellate process could go on for years").

Accordingly, Rule 23(e)(2)(C)(i) and *Bennett* Factors 1 and 4 support Settlement approval, because it provides a certain and favorable recovery for the Settlement Class.

2. *Bennett* Factors 2 and 3, and Rule 23(e)(2)(D): The Range of Recovery, Point at Which a Settlement is Fair, Adequate and Reasonable, and the Equitable Treatment of Class Members All Support Approval

The Settlement provides for an immediate, cash recovery of $10 million. This favorable result is well within the zone of reasonableness to warrant preliminary approval. Plaintiff's damages expert estimates that if Plaintiff were to fully prevail on his claims at summary judgment ***and*** trial—which would require the Court and jury accepting Plaintiff's theory of damages over the Settlement Class Period, including regarding loss causation which Plaintiff expects would be fiercely contested—Plaintiff's ***best-case scenario*** for damages (*i.e.*, maximum theoretical damages) would be approximately $188.1 million. Potrepka Decl. at ¶3. However, this best-case scenario assumes an implausible 100% claims take rate and zero disaggregation of confounding information. Other scenarios were possible. For example, if Defendants were successful in arguing that the first alleged set of corrective disclosures on October 26, 2023 fully disclosed Hertz's alleged EV demand and forecast issues, and that portions of the news that day concerned exogenous factors needing to be disaggregated (*e.g.*, disclosures related to unexpected repair costs), Plaintiff's expert estimates damages would be limited to approximately $20 million. *Id.*

Thus, the Settlement represents a recovery approximately ranging from 5.3% to 50%, which is a larger proportion of damages than the median settlement achieved in similarly sized cases in 2016–2025, and therefore within the range of reasonableness for this complex securities class action. *See* Potrepka Decl., Ex. 3 (2025 NERA Report), at 27, Fig. 23 (median recovery for securities class actions between January 2016 through December 2025, with total damages estimated between $100–199 million, was 3.2%); *Vataj v. Johnson*, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) ($10 million settlement representing 2% of total damages was "consistent with the typical recovery in securities class action[s]"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (recognizing "proof of damages in a securities fraud case is always difficult and requires expert testimony[;]" "that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate[;]" and that a "settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

Additionally, consistent with Rule 23(e)(2)(D), all Settlement Class Members, including Plaintiff, will be treated "equitably relative to each other" in that they will each recover their *pro rata* share of the Net Settlement Fund. Fed. R. Civ. P. 23(e)(2)(D) *Pro rata* distribution is "fair, adequate, and reasonable" in securities class actions. *Hessefort v. Super Micro Computer, Inc.*, 2023 WL 7185778, at *7 (N.D. Cal. May 5, 2023) (collecting cases); *Malespin v. Longeveron Inc.*, 2023 WL 11820921, at *4 (S.D. Fla. Oct. 16, 2023) (recoveries based "relative losses" satisfies Rule 23(e)(2)(D)).

Accordingly, *Bennett* Factors 2 and 3 and Rule 23(e)(2)(D), support approval.

3. *Bennett* Factor 5: The Settlement Class's Reaction is Yet Undetermined

Given that the Settlement Class has yet to receive notice of the Settlement, it is premature to evaluate the Settlement Class Members' reactions. At this stage, Plaintiff is aware of no Settlement Class Member that has indicated any intent to oppose the Settlement. Plaintiff respectfully submits that *Bennett* Factor 5 is currently a non-factor.

4. *Bennett* Factor 6: The Stage of Proceedings Supports Approval

Prior to arriving at the Settlement, Plaintiff had conducted extensive investigation and discovery, as discussed at Section II(A), *supra*, and filed a motion for class certification, which involved thorough consultation with damages experts to evaluate the damages and risk scenarios, with a view towards later expert discovery. The stage of this litigation (*Bennett* Factor 6) supports settlement approval. *See, e.g.*, *Health Ins. Innovations I*, 2020 WL 10486665 at *9 (M.D. Fla. Oct. 21, 2020) (finding parties at similar stage could "adequately assess the strengths and weaknesses of their case and the benefits of entering into the [s]ettlement").

5. Rule 23(e)(2)(C)(ii): The Proposed Distribution Method Supports Approval

Rule 23(e)(2)(C)(ii) requires considering the effectiveness of the method of distributing relief. This Settlement, like most securities class action settlements, would be distributed with the assistance of an established and experienced claims administrator, Angeion. *See, e.g.*, *LaFrano v. Loandepot, Inc.*, 2023 WL 12023569, at *11 (C.D. Cal. Dec. 8, 2023) (appointing Angeion as claims administrator, and finding reasonable the proposed methods of distributing notice); *Kuhne v. Gossamer Bio, Inc.,* 2022 WL 770112, at *2–3 (S.D. Cal. Mar. 14, 2022) (same); Potrepka Decl., Exs. 5–6.

Under the proposed Settlement, Angeion will employ a well-established distribution process. Namely, potential Settlement Class Members will submit the Court-approved Claim Form, which provides simple instructions to Claimants concerning the information they must present to Angeion to process their claims, and the deadlines by which to do so. Based on such trade information, Angeion will determine each Authorized Claimant's share of the Net Settlement Fund based on each Authorized Claimant's Recognized Loss, as defined in the Plan of Allocation described in the Longform Notice. *See* Stip. at ¶9.0; *see also* Longform Notice at 11. After the Settlement reaches its Effective Date (*see* Stip. at ¶11.0) and in accordance with the Stipulation, the Plan of Allocation, or any further necessary order(s) of the Court, the Net Settlement Fund will be distributed to Authorized Claimants. *Id.* at ¶9.5. If unclaimed funds remain after the initial distribution, the Claims Administrator will make further distributions until it is no longer economically feasible. *Id.*

Here, Lead Counsel through the Claims Administrator shall cause the dissemination of the Postcard Notice to all Persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from: (a) Hertz's transfer records; and (b) via nominees which commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. Lead Counsel through the Claims Administrator will also cause the Stipulation with exhibits, the Preliminary Approval Order, the Longform Notice, and the Proof of Claim to be posted on the Settlement website, and will disseminate the Publication Notice on a national newswire.

6. Rule 23(e)(2)(C)(iii): Terms of Proposed Attorneys' Fees Support Approval

As set forth in the Stipulation and the Longform Notice, Lead Counsel intends to seek an award of attorney's fees of no more than one-third of the Settlement Fund, a Compensatory Award to Plaintiff not to exceed $7,500, and out-of-pocket expenses not to exceed $300,000. These requests are in line with securities class action fee awards in this Circuit. *See*, *e.g.*, *Health Ins. Innovations II*, 2021 WL 1341881, at *12 (33% "fee award is reasonable and consistent" with other securities class actions); *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (same), *Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*, 2024 WL 4003330, at *1 (N.D. Ala. Jan. 17, 2024) (awarding 33% of $28 million settlement).

Rule 23(e)(2)(C)(iii) supports approval, as Eleventh Circuit courts "routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) *citing Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases, and concluding that 33% is consistent with the market rate in class actions).

7. Rule 23(e)(2)(C)(iv): Identified Agreement Should Not Bar Approval

The Settling Parties have also entered into a Supplemental Agreement regarding Requests for Exclusion, dated May 15, 2026, which shall remain confidential and not filed with the Court unless a dispute of the terms arises or disclosure is ordered by the Court. *See* Stip. at ¶2.15. The Supplemental Agreement sets forth the threshold for Requests for Exclusion above which Defendants may terminate the Settlement (the "Termination Threshold"). As is standard in securities class actions, such agreement

is not to be made public to avoid incentivizing the formation of a group of Settlement Class Members to seek exclusion for the sole purpose of leveraging the Termination Threshold to exact an individual settlement. *See*, *e.g.*, *Health Ins. Innovations II*, 2021 WL 1341881, at *7 (finding Rule 23(e)(2)(C) satisfied when taking into account a similar agreement); *Gordon v. Vanda Pharms. Inc.,* 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (similar). Thus, the existence of the Supplemental Agreement does not cut against preliminary approval of the Settlement.

## IV. THE SETTLEMENT CLASS MERITS CERTIFICATION

In connection with settlement approval, the Court determines if the proposed class can be certified for "settlement-only" purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A proposed class must satisfy each of Rule 23(a)'s prerequisites—(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation—as well as either Fed. R. Civ. P. 23(b)(1), (2), or (3). *Id.* at 613–14.

The Eleventh Circuit additionally requires a showing that the proposed class is adequately defined such that membership is "ascertainable." *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021). However, such requirement is easily satisfied in securities class actions where claimants will submit transaction records verifying their class membership. *Id.* at 1370; *Health Ins. Innovations I*, 2020 WL 10486665, at *7.

Here, the Settlement Class satisfies all Rule 23(a) and 23(b)(3) requirements. Moreover, given its work, experience, and resources committed to date, Lead Counsel should be appointed as class counsel under Rule 23(g).

1. <u>The Settlement Class Fulfills Rule 23(a)'s Requirements</u>

***Numerosity***. A class must be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Numerosity is "generally assumed to have been met in class action suits involving nationally traded securities." *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 617 (M.D. Fla. 2006) (collecting cases).

Here, Hertz common stock trades publicly on the NASDAQ. Complaint ¶16. During the Settlement Class Period, Hertz had 305–322 million shares outstanding of which an average 3.98 million traded daily (*id.,* ¶219(5) and (7)), meaning that while the exact number of Settlement Class Members is not known at this time, there are likely thousands or more. *See, e.g., Recoton*, 248 F.R.D. at 617 (13 million shares outstanding supported numerosity); *Cheney v. Cyberguard Corp*., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (~8.8 million shares supported same). Thus, numerosity is easily met.

***Commonality***. Fed. R. Civ. P. 23(a)(2) requires "questions of law or fact common to the class[.]" This is a "minimal standard" that "merely requires an identity of some factual or legal matter among members of the class." *Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 378 (N.D. Ga. 2019). "Generally … the element of commonality is met" in securities class actions such as this Action. *Id.*

While "[e]ven a single common question will do[,]" *id.*, this Action involves plentiful common questions of law and fact relating to Plaintiff's claims, including whether: (1) Defendants omitted or misrepresented material facts; (2) Defendants did so with scienter; and (3) the price of Hertz's stock was artificially inflated or maintained during the Settlement Class Period; and (4) Defendants'

misrepresentations and omissions caused economic loss to Settlement Class Members. Thus, the element of commonality is also easily met.

***Typicality***. The "claims or defenses" of a proposed class representative must be "typical" of those of the class, Fed. R. Civ. P. 23(a)(3), meaning they "arise from the same event[s] or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1357 (11th Cir. 2009).

Here, Plaintiff's claims "involve the same [company's] publicly traded securities, facts, and legal theories as those of the Settlement Class Members." *Health Ins. Innovations I*, 2020 WL 10486665, at *5; *see also City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, 2024 WL 5468489, at *2 (S.D. Fla. Feb. 1, 2024) ("alleging the same damages from the same alleged wrongdoing" satisfies typicality).

***Adequacy***. A proposed class representative must "adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in the Eleventh Circuit employ a two-prong test for adequacy: "(1) whether any substantial conflicts of interest exist between the representative[] and the class, and (2) whether the representative[] will adequately prosecute the action." *S. Co.,* 332 F.R.D. at 379 (quoting *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 535 (11th Cir. 2017)).

Here, no substantial conflicts of interest exist between Plaintiff and Settlement Class Members, given that each purchased Hertz stock during the Settlement Class Period and were allegedly injured by the same misrepresentations and omissions. *See id.* Furthermore, as detailed at Section II(A), *supra*, Plaintiff has proven his adequacy

by having vigorously prosecuted this Action for nearly two years to "maximize recovery for all [Settlement] Class members[,]" and thereby "demonstrated a willingness to assert and defend the interests of putative Class members." *Id.*

2. <u>The Settlement Class Fulfills Rule 23(b)(3)'s Requirements</u>

Class certification under Rule 23(b)(3) is appropriate where (i) common questions of law or fact predominate over the potential for individual questions; and (ii) the class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3). Both requirements are readily satisfied here.

*First*, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Common questions predominate" when "the substance and quantity of evidence necessary to prove the class claims won't vary significantly" amongst plaintiffs, but rather, such claims will "be proved using the same evidence for all class members[.]" *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1306 (11th Cir. 2023). The predominance test is "readily met" by securities fraud claims, such as those brought by Plaintiff. *Amchem*, 521 U.S. at 625. Questions common to all Settlement Class Members predominate over individualized ones, because most elements of Plaintiff's claims, as described at Section IV(1), *supra*, are "susceptible to class-wide proof" *S. Co.*, 332 F.R.D at 378, 380 n.4. Moreover, the element of reliance may be presumed on a class-wide basis. *See Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988).

*Second*, a class action is not only superior to alternate methods of adjudicating the Action—it may be the *only* feasible method to do so, given the significant number

of Settlement Class Members relative to the small amounts of many Members' damages. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (recognizing that "most … plaintiffs" in a class action "would have no realistic day in court if a class action were not available"); *see also Cheney*, 213 F.R.D. at 502 ("[i]t would be impracticable to permit individual suits by each shareholder" where "it is alleged that there are thousands of purchasers who have been injured by the alleged wrongful acts").

3. Settlement Class Counsel Meets Rule 23(g)(1)(A)'s Requirements

In appointing class Counsel, the Court must take into account counsels': (i) work done in identifying and investigating claims; (ii) experience in handling such claims; (iii) knowledge of applicable law; and (iv) resources committed to representation. Fed. R. Civ. P. 23(g)(1)(A).

These considerations all weigh in favor of appointing Levi & Korsinsky, LLP ("L&K") as class counsel. L&K has devoted substantial time and resources to identifying and prosecuting the claims in this Action, investigating the legal and factual bases for those claims including interviews with confidential witnesses, drafting the detailed Complaint, and successfully opposing Defendants' motion to dismiss. L&K has also already engaged in significant discovery in this case, including serving and responding to written discovery, producing documents, reviewing over 170,000 pages of documents produced, negotiating a protective order and ESI protocol, serving 30 subpoenas on non-parties and consulting with experts. *See* Section II(A), *supra.* As noted at Section III(A), *supra*, L&K has extensive experience prosecuting complex securities-fraud actions, specializes in this area of law, and has achieved substantial

recoveries for investors. *See* Potrepka Decl., Ex. 2 (Firm Resume).

## V. THE NOTICE MERITS COURT APPROVAL

Rule 23(e)(1)(B) requires courts to "direct notice in a reasonable manner to all class members who would be bound by [a] propos[ed]" settlement. To satisfy due process, notice must be "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, as discussed at Sections II(B)(2) and III(B)(5), Angeion would effectuate notice through proven methods by disseminating a Postcard Notice, Publication Notice, and Longform Notice, and establishing a claims website. Such contents and methods readily satisfy the requirements of Rule 23, due process, and the PSLRA. *See* 15 U.S.C. §78u-4(a)(7); *see also Health Ins. Innovations I*, 2020 WL 10486665, at *10 (approving similar notice plan and contents); *In re Ocwen Fin. Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 236981, at *5-7 (S.D. Fla. Dec. 22, 2017) (same); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 4006662, at *2–4 (S.D. Fla. June 13, 2016) (same).

## VI. CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, thereby granting the relief at Section I, *supra*.

## LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Local Rule 3.01(g), Lead Counsel has conferred with Defendants' Counsel. Defendants do not oppose Plaintiff's foregoing Motion.

Dated: May 15, 2026

Respectfully submitted,

By: */s/Cullin Avram O'Brien*
Cullin Avram O'Brien
**CULLIN O'BRIEN LAW, P.A.**
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Tel: (561) 676-6370
Email: cullin@cullinobrienlaw.com

***Liaison Counsel for Plaintiff and the Class***

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins *
Gregory M. Potrepka *
Amanda D. Foley *
P. Cole von Richthofen *
Joshua E. Kluger *
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: afoley@zlk.com
Email: cvrichthofen@zlk.com
Email: jkluger@zlk.com

***Lead Counsel for Lead Plaintiff***
***Robert Stephens and the Class***

* admitted *pro hac vice*

**APPENDIX A:**
**TABLE OF PROPOSED DEADLINES**

| Event | Deadline for Compliance |
|---|---|
| Date for Final Approval Hearing. | At least one hundred (100) calendar days after the Court preliminarily approves the Settlement. |
| Mailing of Postcard Notice, and launch of settlement website. | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order. |
| Publication of Publication Notice. | No later than twenty-eight (28) calendar days after the entry of Preliminary Approval Order. |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation, and for application for attorneys' fees and reimbursement of expenses. | No later than thirty-five (35) calendar days prior to the Final Approval Hearing. |
| Filing deadline for Requests for Exclusion. | Postmarked no later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Filing deadline for objections. | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Proof of Claim forms to be filed | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Final Approval Hearing. |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing motion was filed electronically with the Clerk of the Court via the CM/ECF system and served on all parties of record on May 15, 2026.

*/s/ Cullin Avram O'Brien*